# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Anna Takkunen,

          Plaintiff,

                                    Civ. No. 08-1454 (RHK/RLE)

v.                                    **MEMORANDUM OPINION AND ORDER**

Sappi Cloquet LLC,

          Defendant.

James W. Balmer, Falsani Balmer Peterson Quinn & Beyer, Duluth, Minnesota, for Plaintiff.

Holly M. Robbins, Littler Mendelson, PC, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

Plaintiff, Anna Takkunen, claims that she was discriminated and retaliated against by her former employer, Defendant Sappi Cloquet LLC ("Sappi"), in violation of federal and state law. Currently pending before the Court is Sappi's Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

Sappi is a producer of coated fine paper. (Cyril C. Porwall Aff. ¶ 2.) On May 22, 2006, Takkunen applied for employment at Sappi and was hired as a General Mill Reserve worker in the Coating Department. (Takkunen Dep. Tr. at 45, Ex. 1.) In the fall of 2006, Takkunen was transferred to a position on the "B shift" where Jeremy Doesken

served as her supervisor.  (Id. at 54.)  While on Doesken's crew, Takkunen admittedly

had some performance issues and was often coached on the job.  (Id. at 75-76, 123-26,

142, 146, 246-47, 254, Ex. 13.)

In May 2007, Takkunen asserts that a co-worker, Peter Began, repeatedly tugged

on her shorts, patted his lap for her to sit down, ran his fingers through her hair, once

commented on her breast size, mentioned that there were places in the mill they could go

to be alone, once pretended to unzip his pants in front of her, and often asked whether she

was having sexual relations with a co-worker, Wes Schiller.  (Id. at 152-55, 164-70.)  She

complained to Doesken about this behavior on two occasions.  (Id. at 178-85.)  When

Doesken took no remedial action, Takkunen went to HR manager Cyril C. Porwall to

report the harassment.  (Id. at 194-96.)

Porwall immediately launched an investigation that included interviews with

Takkunen, Began, Doesken, Schiller, and other co-workers on Takkunen's crew.

(Porwall Aff. ¶ 7; Rod Petron Aff. ¶ 3.)  Began admitted to most of the behavior reported

by Takkunen.  (Petron Aff. ¶ 3; Ex. B.)  As discipline, Began was placed in a

"consultation step," was warned that further inappropriate behavior would lead to more

severe discipline or discharge, and a permanent record was placed in his personnel file.

(Id. at ¶ 4, Ex. A.)  After these actions were taken, Began's inappropriate behavior

ceased.  (Takkunen Dep. Tr. at 202-03, 224.)  Takkunen was informed that Began's

behavior was inappropriate and being addressed by management.  (Petron Aff. Ex. B.)

Takkunen was also informed that her performance issues would continue to be monitored.

(Id.)

Soon after the harassment investigation, Doesken had a meeting with his supervisors and was advised that he needed to improve his performance regarding sexual-harassment issues within his crew and that he needed to document employee performance problems. (Porwall Aff. Ex. A.) He was also told that despite the sexual-harassment complaint, he needed to continue to manage Takkunen's job performance. (Id.). Doesken then began documenting instances in which Takkunen's job performance was insufficient. (Doesken Dep. Tr. at 40.) In total, Doesken documented eight incidents. (Balmer Aff. Exs. H1-H9.) Takkunen was only made aware of one documented performance issue because it was the only issue that resulted in a formal written reprimand. (Doesken Dep. Tr. at 23-26.) Takkunen claims that she felt increased scrutiny at Sappi after the sexual-harassment investigation. (Takkunen Dep. Tr. at 200-01, 241.)

In November 2007, Takkunen transferred out of Doesken's crew to the "back end" of the mill, a transfer she had requested prior to her sexual-harassment complaint. (Id. at 84-85, 89.) Takkunen asserts she took this transfer to get away from the stress of her post-investigation work environment. (Id. at 240.) Before taking this transfer, Takkunen turned down other transfer offers made after her harassment complaint. (Porwall Aff. ¶ 9.) Because of this transition, Takkunen lost her "B-pay." (Takkunen Dep. Tr. at 240.) A Sappi employee is entitled to B-pay (an additional 50 cents per hour) when she completes her training in a new position and is qualified to perform the job "above [her]

3

regular position." (Porwall Aff. ¶ 5.) Such B-pay is lost when an employee switches

positions but is reinstated when training is complete. (Id.) Sue Obeidzinski trained

Takkunen in her new position. (Takkunen Dep. Tr. at 90.) Takkunen claims that

Obeidzinski "continued the pattern of persecution and nit-picking" that she suffered on

Doesken's crew. (Mem. in Opp'n at 25 (citing Takkunen Dep. Tr. 90-94, 100-01, 140,

215-20).)

Mandatory sexual-harassment prevention training was conducted by Sappi in

January and February 2008. (Porwall Dep. Tr. at 21.) Sappi has a sexual-harassment

policy and conducts sexual-harassment prevention training every two or three years.

(Porwall Aff. ¶ 3.) Sappi offered Takkunen a choice of two dates for this training.

(Margi Sloan Aff. ¶ 2.) Takkunen attended the same training session as Began, despite

her request to attend separate sessions. (Takkunen Dep. Tr. at 203.) The record is

unclear as to how this occurred. During the training, members of Doesken's crew asked

questions that Takkunen felt were directed at her, but Began himself asked no questions.

(Id. at 204-05, 211.) Takkunen found this experience to be upsetting and she was allowed

to take the rest of the day off. (Id. at 206-07.) She then took an extended leave of

absence. (Sloan Aff. ¶ 6.) At oral argument, the parties informed the Court that this

leave was initially a paid medical leave of absence that then became unpaid. After being

on leave for a year, Takkunen informed Sappi she would be unable to return to work.

(Holly Robbins Aff. ¶ 2; Ex. A.) Sappi interpreted this as a voluntary resignation and so

informed her counsel. (Id.)

On May 27, 2008, Takkunen filed the instant action.  She claims gender

discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the

Minnesota Human Rights Act, Minn. Stat. § 363A *et seq.*, ("MHRA").  Sappi now moves

for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the

material facts in the case are undisputed.  Celotex, 477 U.S. at 322; Mems v. City of St.

Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must

view the evidence, and the inferences that may be reasonably drawn from it, in the light

most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d

721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir.

1997).  The nonmoving party may not rest on mere allegations or denials, but must show

through the presentation of admissible evidence that specific facts exist creating a genuine

issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v.

County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

**I.      The discrimination claim**

Takkunen claims she was subjected to sexual harassment while employed at Sappi

that created a hostile work environment in violation of Title VII and the MHRA.  To

establish a hostile-work-environment claim, a plaintiff "must show (1) [she] belonged to a

protected group; (2) [she] was subjected to unwelcome harassment; (3) the harassment

was based upon [protected group status]; (4) the harassment affected a term, condition, or

privilege of [her] employment; and (5) the employer knew or should have known of the

harassment and failed to take proper remedial action."  Green v. Franklin Nat'l Bank of

Minneapolis, 459 F.3d 903, 910 (8th Cir. 2006) (internal quotation marks and alteration

omitted).[1]

### A. The alleged sexual harassment did not affect a term, condition, or privilege of Takkunen's employment

To prevail on her hostile-work-environment claim, Takkunen must demonstrate

that the alleged sexual harassment "was sufficiently severe or pervasive as to affect a

term, condition, or privilege of employment by creating an objectively hostile or abusive

environment."  Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 993 (8th Cir.

2003).  The harassment at issue must be both subjectively and objectively offensive such

that a reasonable person would find it to be hostile or abusive.  Erenberg v. Methodist

Hosp., 357 F.3d 787, 792 (8th Cir. 2004).  In determining this issue, a court may look to

factors such as the frequency of the discriminatory conduct; its severity; whether it is

---

[1] While Takkunen brings her gender discrimination claim under both Title VII and the MHRA, the Court looks to federal case law to analyze claims under both statutes.  See Riser v. Target Corp., 458 F.3d 817, 820 n.2 (8th Cir. 2006); Mems, 224 F.3d at 738.  Minnesota courts addressing claims of sexual harassment brought under the MHRA often look to Title VII cases for guidance.  See Goins v. W. Group, 635 N.W.2d 717, 724 n.3 (Minn. 2001).

physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.  Id.  "Simple teasing,

offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the terms and conditions of employment."  Id. (internal

quotation marks and citation omitted).[2]

Takkunen cannot demonstrate harassment that affected a term, condition, or

privilege of her employment.[3]  While Began tugged on Takkunen's shorts, ran his fingers

through her hair, asked inappropriate questions about her sex life and breasts, and made

improper sexual gestures and invitations, Began's comments were "neither severe nor

pervasive enough to create a hostile work environment."  Woodland v. Joseph T. Ryerson

& Son, Inc., 302 F.3d 839, 844 (8th Cir. 2002) (internal quotation marks omitted).  Nor

was the behavior "sufficiently derogatory or demeaning to permit a finding that [it]

altered the terms of [Takkunen's] employment."  Breeding v. Arthur J. Gallagher & Co.,

164 F.3d 1151, 1159 (8th Cir. 1999).  Takkunen was not physically threatened and was

---

[2] Takkunen asserts that "Defendant has admitted that Mr. Began's conduct violated its
prohibitions against sexual harassment on the job, as well as Federal and state law" and
therefore, this "conclusion is a binding admission by Defendant under Fed. R. Evid.
801(d)(2)(A)."  (Mem. in Opp'n at 15.)  This statement is erroneous.  Sappi does not deny that
the behavior of Began was inappropriate, but Sappi has not admitted a violation of state or
federal law.

[3] In her brief, Takkunen discussed only the behavior of Began in support of her hostile-work-
environment claim.  However, at oral argument, Takkunen's counsel hinted that other behavior
occurred at Sappi that contributed to the discriminatory work environment.  Nevertheless,
because this other behavior was not briefed or addressed in any detail, the Court will not
consider it.

reasonably able to perform her job responsibilities.  While Began may have been

"boorish, chauvinistic, and decidedly immature," his actions did not create "an

objectively hostile work environment."  Duncan v. Gen. Motors Corp., 300 F.3d 928, 935

(8th Cir. 2002).[4]

The Eighth Circuit has rejected hostile-work-environment claims based on facts

more egregious than those presented here.  For example, in LeGrand v. Area Resources

for Community and Human Services, the Eighth Circuit determined that the plaintiff did

not suffer from severe or pervasive sexual harassment when he was asked to watch

pornographic movies with a board member and "jerk off," was kissed on the mouth, had

his buttocks and thigh grabbed, and experienced a suggestive reach toward, and brush-up

against, his genitals.  394 F.3d 1098, 1100-03 (8th Cir. 2005).  In finding that this

behavior was not severe or pervasive, the court noted that "[n]one of the incidents [were]

physically violent or overtly threatening."  Id. at 1102.

The hostile-work-environment cause of action "is limited to extreme work

conditions," Gipson v. KAS Snacktime Co., 171 F.3d 574, 579 (8th Cir. 1999) (citing

cases), and Takkunen has failed to raise a genuine issue of material fact with respect to

hers.  Accordingly, Takkunen's hostile-work-environment claim fails.

---

[4] At oral argument, Plaintiff's counsel contended that Doesken's failure to respond to Takkunen's sexual-harassment complaints expressed his acceptance of the behavior, and therefore, contributed to the severe and pervasive nature of the sexual harassment.  Counsel, however, failed to cite any case law supporting this assertion.  In the Court's view, Doesken's response, or lack thereof, cannot make Began's behavior more (or less) severe or pervasive.

### B.      Sappi took prompt remedial action

Even if the alleged sexual harassment affected a term, condition, or privilege of

Takkunen's employment, dismissal of the hostile-work-environment claim would

nevertheless be required because Sappi took prompt remedial action.  An employer is not

liable for sexual harassment unless it "knew or should have known about the harassment

and failed to take prompt and remedial action reasonably calculated to end the

harassment."  Stuart v. Gen. Motors Corp., 217 F.3d 621, 633 (8th Cir. 2000) (citation

omitted).  Factors the Court may consider when assessing the reasonableness of Sappi's

remedial measures are:

> [T]he amount of time elapsed between the notice of harassment, which
> includes but is not limited to a complaint of sexual harassment, and the
> remedial action, and the options available to the employer such as employee
> training sessions, disciplinary action taken against the harasser(s), reprimands
> in personnel files, and terminations, and whether or not the measures ended
> the harassment.

Id.  In this case, Takkunen does not dispute that Sappi's response to her sexual-

harassment complaint was prompt, but rather contends that Sappi "did not take

appropriate corrective action."  (Mem. in Opp'n at 21.)

In the Court's view, Sappi's remedial measures were reasonable and appropriate.

After the sexual harassment was reported, an investigation was immediately commenced

and several Sappi employees were interviewed.  Began was placed in a consultation step

and warned that continued inappropriate behavior would lead to more severe discipline or

discharge.  Takkunen admits that after these actions were taken, the sexual harassment

ceased.  See Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 968 (8th Cir. 1999) (noting that an

employer's response was an adequate remedial action because "after management took

action, the incidents were not repeated").  Moreover, the Eighth Circuit has held that a

written warning can be a sufficient remedial measure.  See Zirpel v. Toshiba Am. Info.

Sys., Inc., 111 F.3d 80, 81 (8th Cir. 1997).  In fact, no punitive action is needed at all as

long as a chosen remedy is reasonably calculated to prevent future harassment.  Knabe v.

The Boury Corp., 114 F.3d 407, 414 (3d Cir. 1997). [5]

        In sum, Takkunen cannot establish a genuine issue of material fact with respect to

her hostile-work-environment claim.  Viewing the evidence in the light most favorable to

her, the alleged sexual harassment was not sufficiently severe or pervasive as to affect a

term, condition, or privilege of her employment.  Moreover, Sappi's response to her

complaint was effective, reasonable, and appropriate.  Accordingly, Takkunen's hostile-

work-environment claim must be dismissed.

**II.     The retaliation claim**

        Takkunen asserts that Sappi retaliated against her for making the sexual-

harassment complaint.  (Mem. in Opp'n at 22-32.)  Because Takkunen presents no direct

evidence of retaliation, the familiar McDonnell Douglas burden-shifting framework

governs the order and analysis of proof for this claim.  Kasper v. Federated Mut. Ins. Co.,

---

[5] Takkunen also claims that Sappi failed to take any remedial action after Takkunen was "forced
to sit through the [sexual-harassment] seminar with Mr. Began and his friends."  (Mem. in Opp'n
at 22.)  However, Takkunen does not explain how the events that occurred at the training can be
characterized as harassment based on her protected group status.  See Green, 459 F.3d at 910.

425 F.3d 496, 502 (8th Cir. 2005).[6]  Under this analysis, the plaintiff bears the initial

burden of establishing a prima-facie case of retaliation.  McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 802 (1973).  After the plaintiff has met this burden, the defendant

must articulate a legitimate, nondiscriminatory reason for its actions.  Id.  Finally, the

burden shifts back to the plaintiff to establish that the defendant's proffered

nondiscriminatory reason was a pretext.  Id. at 804.

Sappi argues that Takkunen has failed to establish a prima-facie case of retaliation.

(Def. Mem. at 28-34.)  To establish a prima-facie case, an employee must show:

(1) statutorily-protected conduct by the employee; (2) an adverse action by the employer;

and (3) a causal connection between the two.  Jackson v. United Parcel Serv., Inc., 548

F.3d 1137, 1142 (8th Cir. 2008).

Sappi does not dispute that Takkunen engaged in protected conduct.  Rather, it

argues that she cannot establish an adverse employment action.  The Court agrees.

Takkunen claims she endured an escalating pattern of retaliatory measures that

qualify as adverse employment actions.  (Mem. in Opp'n at 22.)  These alleged retaliatory

measures were:  (1) a transfer that resulted in reduced pay; (2) "nit-picking" by Doesken

and Obeidzinski and several "write-ups;" (3) a directive instructing employees not to talk

with Takkunen during the sexual-harassment investigation; (4) Sappi's refusal to

---

Moreover, Began, the alleged harasser, did not speak at all during the training.
[6] MHRA retaliation claims are analyzed in the same fashion as Title VII retaliation claims.  See
Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 101 (Minn. 1999).

meaningfully discipline Began or Doesken; and (5) mandatory sexual-harassment training.  (Id. at 22-32.)[7]

To establish an adverse employment action, an employee "must show that a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  The employer's conduct must be sufficiently severe that it "well might have dissuaded a reasonable worker from" engaging in the protected conduct.  Id. (internal quotation marks and citation omitted).  An adverse employment action must be "material" because "it is important to separate significant from trivial harms."  Id.  Moreover, a plaintiff "must do more than allege that actions taken by her employer created the potential for harm; rather, she must show some tangible harm flowing from the employer's actions."  Black v. Indep. Sch. Dist. No. 316, 476 F. Supp. 2d 1115, 1123 (D. Minn. 2007) (Kyle, J.).

Takkunen has failed to raise a genuine issue of material fact with respect to whether she suffered an adverse employment action.  First, Takkunen's transfer and pay reduction was not an adverse employment action.  While Takkunen claims that she felt forced to take this transfer, Takkunen had requested it prior to her sexual-harassment

---

7 Takkunen also refers in her brief to the presence of Sappi's legal team and a private investigator after the sexual-harassment investigation. (Mem. in Opp'n at 30-32.)  The Court fails to see how the presence of the legal team or the private investigator could constitute a retaliatory measure.  Sappi certainly has the right to retain legal counsel when charges of sexual harassment are made. Moreover, the parties indicated at oral argument that the investigator was hired as a result of Takkunen's workers' compensation claim, not her sexual-harassment claim. Finally, "investigations into employee complaints are not adverse employment actions when they do not result in any change in form or condition to the employee's employment."  Altonen v. City of Minneapolis, 487 F.3d 554, 560 (8th Cir. 2007).

complaint.  In fact, during her deposition, Takkunen explained that she wanted this

transfer because the work in the "back end" was easier.  (Takkunen Dep. Tr. at 85.)

Moreover, Takkunen was not required to take the transfer when offered.  See Johnson v.

Runyon, 137 F.3d 1081, 1082 (8th Cir. 1998) (holding that voluntary early retirement was

not an adverse employment action).  Takkunen did not feel pressure to take an undesired

transfer, as she refused transfers subsequent to her sexual-harassment complaint that did

not appeal to her.  With regard to Takkunen's pay decrease, this action was only

temporary, as her B-pay would have been reinstated as soon as she was properly trained

in her new position and able to perform the job above her.  Such a temporary change in

pay was not materially adverse.

Second, the several "write-ups" and "nitpicking" do not constitute adverse

employment actions.  The "write-ups" constitute trivial, rather than significant harms, see

White, 548 U.S. at 67, because there is no indication that Takkunen suffered any tangible

harm from having received them.  In fact, negative evaluations are an adverse

employment action only when used "as a basis to detrimentally alter the terms or

conditions of the recipient's employment."  Spears v. Mo. Dep. of Corr. & Human Res.,

210 F.3d 850, 854 (8th Cir. 2000); see also Montandon v. Farmland Indus., Inc., 116 F.3d

355, 359 (8th Cir. 1997).[8]  Similarly, Takkunen's complaint of "nit-picking" does not

---

[8] One of the eight "write-ups" was a written reprimand placed in Takkunen's personnel file.
(Takkunen Dep. Tr. Ex. 13.)  However, as a result of this reprimand, Takkunen suffered no loss
in pay or benefits and her job responsibilities were not altered.  (Id. at 44-45.)  Therefore, this
reprimand was not a materially adverse employment action.

constitute an adverse employment action. Feeling "overly scrutinized" does not change a term or condition of employment. Henthorn v. Capitol Commc'ns, Inc., 359 F.3d 1021, 1029 (8th Cir. 2004). Moreover, Takkunen admits that Doesken had "nit-picked" her long prior to her sexual-harassment complaint (Takkunen Dep. Tr. at 82), and therefore, no condition of her employment changed.

Third, the fact that employees were told not to speak to Takkunen during the sexual-harassment investigation was not an adverse employment action. "[O]stracism and disrespect by supervisors [does] not rise to the level of an adverse employment action." Scusa, 181 F.3d at 969. Moreover, there is no evidence that Sappi management told its employees to stop *all* interaction with Takkunen, as was the case in Moore v. Kuka Welding Systems & Robot Corporation, 171 F.3d 1073, 1079-80 (6th Cir. 1999) (finding an adverse employment action when "[e]mployees were instructed not to talk to plaintiff and to remove their tool boxes from his area so they would have no reason to go back there."). Here, it appears that Sappi employees were told not to talk with Takkunen during the pendency of the investigation only and were not told to ostracize her. (Takkunen Dep. Tr. at 198-99; Balmer Aff. Ex. D.)

Fourth, Sappi's discipline of Began and Doesken cannot be considered adverse employment actions. As discussed above, Sappi's response to Began's inappropriate behavior was a reasonable remedial measure, and therefore is not an adverse employment action. Similarly, Sappi's response to the alleged conduct of Doesken is not an adverse employment action. Takkunen claims that Sappi did not address Doesken's alleged

14

failure to report her complaints of sexual harassment.  However, the record indicates that

Doesken was counseled on how to properly address sexual harassment occurring in his

crew.  (Porwall Aff. ¶ 8; Ex. A.)  Moreover, the alleged failure of Sappi to discipline

Began and Doesken more harshly did not cause Takkunen to suffer any tangible harm,

and therefore, such inaction was not materially adverse.

Finally, the mandatory sexual-harassment training was not an adverse employment

action.  All employees were required to attend this training every few years and there is

no evidence indicating that Sappi planned it in order to harm or embarrass Takkunen.  In

fact, Takkunen's counsel admitted at oral argument that he cannot prove that the sexual-

harassment prevention training had anything to do with the sexual-harassment complaint.

Additionally, "[t]he law only protects employees from retaliation by their employers and

not 'hostility or retaliation from co-workers.'"  Sandoval v. Am. Bldg. Maint. Indus., Inc.,

552 F. Supp. 2d 867, 913 (D. Minn. 2008) (Kyle, J.) (quoting Kipp v. Mo. Highway &

Transp. Comm'n., 280 F.3d 893, 897 (8th Cir. 2002)).  Thus, the questions asked by

employees during the training, which may or may not have been directed at Takkunen,

cannot be construed as Sappi retaliation.

In sum, Takkunen has failed to raise a genuine issue of material fact with respect

to her prima facie case of retaliation because she suffered no adverse employment action.

Looking at the evidence in the light most favorable to her, the allegations of retaliation do

not rise to the level of "a material employment disadvantage, such as a change in salary,

benefits, or responsibilities."  Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005)

(internal quotation marks and citation omitted).  Even when considered in their totality,

the Court finds that these actions were not materially adverse.  Accordingly, Takkunen's

retaliation claim fails.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 51) is

**GRANTED** and Plaintiff's Amended Complaint (Doc. No. 3) is **DISMISSED WITH**

**PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 6, 2009                                                s/Richard H. Kyle
                                                                        RICHARD H. KYLE
                                                                        United States District Judge